FILED
2012 Sep-26  AM 11:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **ROSA OCHOA DEREYES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO.** |
| | ) | **5:11-CV-02727-KOB** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

## I.  Introduction

On February 3, 2009, the claimant, Rosa Ochoa Dereyes, applied for a period of disability and disability insurance benefits under Title II of the Social Security Act. (R. 17). The claimant initially alleged disability beginning April 1, 2003 because of injuries to the right side of her body, nerve damage, a heart condition, depression and weakness in her right leg. The claimant stated that these conditions caused constant pain and limited her ability to move. (R. 154). The Commissioner denied these claims initially on April 15, 2009. The claimant filed a timely request for a hearing before an Administrative Law Judge, and the ALJ held a hearing on August 4, 2010. At the hearing, the claimant amended her alleged onset date of disability to March 17, 2007. (R. 17). In a decision dated September 27, 2010, the ALJ found that the claimant was not disabled as defined by the Social Security Act and was, therefore, ineligible for a period of disability and disability insurance benefits. (R. 22). On May 27, 2011, the Appeals Council denied the claimant's request for review; consequently, the ALJ's decision became the final

decision of the Commissioner of the Social Security Administration. (R. 1). The claimant has

exhausted her administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3). For the reasons stated below, this court affirms the decision of the

Commissioner.

## II. ISSUES PRESENTED

The claimant presents the following issues for review: 1) whether the ALJ erred in failing

to give weight to the examining physician Dr. Acosta's opinion; and 2) whether the ALJ erred in

finding that the claimant did not have a severe medically determinable impairment.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must

affirm the Commissioner's decision if the Commissioner applied the correct legal standards and

if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham*

*v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir.

1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions,

including determination of the proper standards to be applied in evaluating claims." *Walker*, 826

F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*. The

court will affirm those factual determinations that are supported by substantial evidence.

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402

U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the

[Commissioner's] factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not look only to those parts of the record that support the decision of the ALJ, but must also view the record in its entirety and take account of the evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently employed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); *see* 20 C.F.R. §§ 404.1520, 416.920.

The claimant has the burden to prove that she has a disability, defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see Gibson v.*

3

*Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985). To state a claim for disability insurance benefits,

the clamant must demonstrate that she became disabled prior to the expiration of her disability

insured status. *See* 42 U.S.C. §§ 416(i)(3), 423(a), (c); 20 C.F.R. §§ 404.101, 404.130, 404.131;

*Moore v. Barnhart*, 405 F.3d 1205, 1211 (11th Cir. 2005).

> To demonstrate that she has a disability, a claimant must present objective medical

evidence that establishes the presence of a severe medically determinable impairment. *See* 42

U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1505(a). The medical evidence must be from an

acceptable medical source, such as a medical doctor. 20 C.F.R.§ 404.1513(a). The evidence must

show that the claimant has "anatomical, physiological, or psychological abnormalities which can

be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §

404.1508; *see also* 20 C.F.R. § 404.1528.

> To qualify as a severe impairment, an impairment must significantly limit a claimant's

ability to perform basic work activities, such as walking or understanding and remembering

directions. 20 C.F.R. §§ 404.1520(c), 404.1521; *see also McCruter v. Bowen*, 791 F.2d 1544,

1547 (11th Cir. 1986). A diagnosis of a condition is insufficient to establish that a claimant's

impairment is severe. *See Moore*, 405 F.3d at 1213 n.6; *Sellers v. Barnhart*, 246 F. Supp. 2d

1201, 1211 (M.D. Ala. 2002). If a claimant does not meet her burden to produce evidence that

establishes that she has a severe medically determinable impairment, she will be found not

disabled. *See* 20 C.F.R. 404.1520(a)(4)(ii), (c); *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40

(11th Cir. 2004); *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).

> An ALJ may consider a claimant's treatment history in determining whether she is

disabled. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211-12 (11th Cir. 2005); *Ogranaja v. Comm'r*

*of Soc. Sec.*, 186 F. App'x 848, 851 (11th Cir. 2006); *McCloud v. Barnhart*, 166 F. App'x 410, 417-18 (11th Cir. 2006). When evaluating whether a condition prevents the claimant from working, an ALJ may consider a claimant's treatment history for that condition. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). If a claimant continues to work despite the onset of an impairment, an ALJ may use the claimant's continued work as evidence that she does not have an impairment. *Ellison v. Barnhart*, 355 F.3d 1272, 1275-76 (11th Cir. 2003). An ALJ may find that a claimant's impairment is not severe even if a physician has limited the claimant to only perform work at a medium level of exertion. *Chereza v. Comm'r of Soc. Sec.*, 379 F. App'x 934, 941 (11th Cir. 2010).

If the ALJ relies solely on a claimant's noncompliance as grounds to deny disability benefits, and the records shows that the claimant could not afford prescribed medical treatment, the ALJ must make a determination regarding the claimant's ability to afford treatment. *Ellison*, 355 F.3d at 1275. A claimant's poverty may excuse her failure to follow prescribed medical treatment. *Id*. However, if the ALJ does not substantially or solely base his finding of nondisability on the claimant's noncompliance, the ALJ does not commit reversible error by failing to consider the claimant's financial situation. *Id*.

An ALJ has the authority to weigh a medical opinion and determine how much influence the opinion should have on his findings. *See* 20 C.F.R. § 404.1527(d); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004). An ALJ has good cause to discount a physician's opinion if the opinion is conclusory. *See Phillips*, 357 F.3d at 1240-41; *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991). If a physician's opinion does not pertain to the claimant's condition during the disability period, the ALJ may decline to give weight to the

opinion. *See Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 833 (11th Cir. 2011).

## V. FACTS

The claimant has a seventh-grade education and was fifty-six years old at the time of the administrative hearing. She cannot read or speak English and does not have a driver's license. (R. 40). Her past work experience includes work as a harvest worker, poultry processor, laundry worker, cleaner, assembler, assembly supervisor, packager, and roller. (R. 46-49). The claimant initially alleged disability beginning April 1, 2003 because of injuries to the right side of her body, nerve damage, a heart condition, depression and weakness in her right leg. (R. 154). On August 4, 2010, the claimant amended the onset date of her disability to March 17, 2007. (R. 144). The claimant used a Spanish-speaking interpreter to communicate at the ALJ hearing and often when receiving medical treatment. (R. 253).

*Physical Limitations*

On January 5, 2001, Dr. Susie W. Lynn examined the claimant at the Occupational Health Group in Madison, AL. The claimant had suffered injuries on December 31, 2000, after a bag of laundry struck her on the neck and upper back from a height of approximately eight feet. A cervical spine x-ray revealed no acute abnormalities. The claimant complained of pain on both sides of her neck, with radiation into the upper back and right shoulder. Dr. Lynn reported that the claimant demonstrated some mild to moderate guarding of the head and neck but had no appearance of acute distress. The doctor referred her to physical therapy and gave her a prescription for Naprosyn, Robaxin and Lorcet Plus. (R. 253).

On February 12, 2001, the claimant complained of pain to Dr. Lynn after attending a "limited" number of physical therapy sessions. (R. 251).

6

On March 9, 2001, Dr. John Collins performed an MRI of the claimant's cervical spine at Dr. Lynn's request. Dr. Collins found no misalignment or pathologic signal. The report stated that the MRI revealed "no significant finding." (R. 239).

On March 22, 2001, Dr. Shelinder Aggarwal performed an electrodiagnostic consultation at Dr. Lynn's request. The claimant described her pain level as a six on a scale from one to ten. (R. 265). On March 29, 2001, Dr. Lynn reported that a previous nerve conduction study and EMG on the claimant's right upper extremity revealed no evidence of radiculopathy, carpal tunnel syndrome, plexopathy, radial or ulnar neuropathy in the right upper extremity. Dr. Lynn released her to perform her work duties "as normal as possible, with avoidance of wet laundry." (R. 247).

On April 12, 2001, Dr. Rea[1] examined the claimant at Occupational Health Group of Madison. The claimant complained that she was unable to sleep because of pain in her neck and right shoulder. (R. 246).

On April 26, 2001, Dr. Lynn examined the claimant. The claimant reported that she had been sorting and rolling laundry at work, and the doctor found that she was "tolerating this nicely." Dr. Lynn observed that the claimant had normal and full movement of her right upper extremity during normal conversation. She provided her with Aleve to treat any pain and released her to continue with her regular work duties. (R. 245).

On June 6, 2001, Mark Matzek, a physical therapist, performed a Functional Capacity Evaluation of the claimant at the request of Dr. Lynn. The claimant stated that she was then working without restrictions. Mr. Matzek described the claimant's work level as having a

---

[1]The record does not include Dr. Rea's first name.

7

"medium physical demand." (R. 220-29).

On June 14, 2001, the claimant complained of right side weakness to Dr. Lynn. The doctor did not detect any atrophy or changes between the upper right and upper left extremity. (R. 242). On July 18, 2001, Dr. Lynn examined the claimant, who complained of upper right extremity weakness. After performing motor strength testing, the doctor stated that she "did not believe the patient to be providing maximal effort." Dr. Lynn concluded that she "[felt he had] nothing further to offer [the] patient," and she referred her to Dr. Aggarwal. (R. 241).

On July 26, 2001, Dr. Aggarwal examined the claimant. He reported that she had chronic cervical myofascial pain syndrome with right upper extremity weakness. The doctor enrolled the claimant in physical therapy and declined to do further tests, as "all previous studies [had] been normal." The doctor placed her on "permanent work restrictions." The record does not give any details as to what these restrictions entail. (R. 263).

On August 1, 2001, the claimant received a cervical evaluation at Huntsville Hospital Therapy Services at the request of Dr. Aggarwal. A progress summary report from August 14, 2001 states that the claimant planned to continue treatment, but the record contains no evidence that the claimant received further therapy at this institution. (R. 230-32).

On November 28, 2001, Dr. Shannon Davis treated the claimant, who complained of hearing loss and vertigo. Dr. Robert Akenhead, a radiologist, performed a CT scan of the claimant's temporal bones at the request of Dr. Davis. Dr. Akenhead concluded that the claimant's temporal bone was normal. On December 17, 2001, Dr. Peter Booher, a radiologist, performed an MRI of the claimant's brain at the request of Dr. Davis. The MRI revealed that the

claimant had mild tortuosity of the basilar artery,[2] no CP angle tumor and no enhancing lesions. (R. 234-37).

On August 28, 2003, Dr. Lowery[3] treated the claimant for a laceration of her left thumb. The record states that the claimant injured her thumb at work. The doctor determined that the claimant had good neuromotor vascular function and released her to regular work duty. (R. 254).

On June 21, 2005, Dr. Jere Weaver treated the claimant at the River Oaks Clinic in Decatur, AL. The claimant complained that she had pain throughout her body. The doctor's notes are illegible and, therefore, unclear as to any diagnosis or treatment. (R. 256).

On November 3, 2005, Dr. Aggarwal examined the claimant. The claimant complained of chronic neck pain with right arm weakness. The record states that the claimant had been living in Mexico for "the last several years." Dr. Aggarwal found that the claimant had normal strength except for "some weakness" in her right upper extremity. He recorded her grip strength as a four out of five. He prescribed Celebrex, Ultram, Neurontin and a Lidoderm patch. (R. 262).

On March 17, 2007, Dr. Anita Arnold examined the claimant after she was admitted to the emergency room of Decatur General Hospital with a headache and some mild chest discomfort. Tests showed that the claimant had "borderline blood pressure issues," and an electrocardiogram showed mild abnormalities. A left heart catheterization with left ventriculography showed mild coronary atherosclerosis with normal left ventricular function. Dr. Arnold concluded that the claimant had moderate diffuse coronary disease and gave her a two months supply of  Mevacor, aspirin and Toprol-XL.  The records indicate that the best course of

---

[2]The claimant had mild twisting of the basilar artery.

[3]The record does not include Dr. Lowery's first name.

treatment for her mild coronary atherosclerosis would be medical therapy.  The doctor discharged the claimant on March 18, 2007 and referred her to a free clinic. (R. 270-73).

On March 15, 2009, the claimant completed a Function Report at the request of the Social Security Administration. The claimant listed shopping, camping, and cooking as her hobbies and interests, and stated that she made plans with her friends. (R. 191-98).

On April 13, 2009, Jennifer Anderson performed the medical portion of the disability determination for the Disability Determination Service. Ms. Anderson stated that she had "insufficient evidence" to rate the claimant's disability prior to her date last insured. She stated that she had attempted to contact the claimant on February 26, 2009 and March 4, 2009, but the claimant did not answer these attempts. Ms. Anderson also sent a letter to the claimant written in Spanish, but the claimant failed to respond. Ms. Anderson then attempted and failed to make contact with a third party. Ms. Anderson noted that the record contained no evidence that the claimant received treatment for her alleged conditions after March 2007. (R. 281-85).

On April 14, 2009, Dr. Robert Estock performed a psychiatric review of the claimant for the Department of Disability Services. The claimant alleged that she suffered from depression. Dr. Estock noted that the claimant's record revealed no treatment for depression prior to her date last insured. The doctor stated that he had insufficient evidence to reach a conclusion. (R. 286).

On March 20, 2010, Dr. Marcos Delgado Acosta treated the claimant in Chihuahua, Mexico. The interpreter at the ALJ hearing translated Dr. Acosta's report. Dr. Acosta performed an electromyolography that revealed that the claimant had lateral sclerosis that had not been treated for four years. The doctor wrote that the illness was "advanced and incapacitating," and recommended that the claimant not work after June 2011. (R. 300, 21).

10

*The ALJ Hearing*

After the Commissioner denied the claimant's request for a period of disability and disability insurance benefits, the claimant requested and received a hearing before an ALJ. At the hearing on August 4, 2010, Hal Carrigan acted as an interpreter, as the claimant only speaks Spanish. The claimant testified that she has had "problems" for eight years, but that the problems had worsened since her hospital visit in 2007 regarding her heart. She also stated that a "lack of strength" prevented her from working. She testified that her problems affected her ability to use her arms and hands. The claimant stated that a bump on her foot prevented her from being able to stand or walk for long amounts of time. (R. 41-42).

The claimant testified that she had no money or health insurance and was unable to afford medicine. She stated that her inability to afford medicine led her to seek medical treatment in Mexico. The claimant testified that Dr. Acosta examined her in Mexico and declared that she was disabled. The interpreter translated Dr. Acosta's report that stated that the doctor was a legally authorized surgeon. Dr. Acosta stated that he performed an electromyography and concluded that the claimant had lateral sclerosis that had not been treated for four years. The doctor wrote that the illness was "advanced and incapacitating," and recommended that the claimant not work after June 2011. (R. 43-45).

Melissa Neel, the vocational expert, testified concerning the type and availability of jobs that the claimant was able to perform. Ms. Neel testified the following about the claimant's work history: that the claimant's previous work as a harvest worker qualified as an unskilled job with a medium exertion level; that her previous work as a cleaner qualified as an unskilled job with a light exertion level; that her previous work as a chicken de-boner qualified as an unskilled job

11

with a light exertion level; that her previous work as an assembler qualified as a semiskilled job

with a light exertion level; that her previous work as an assembly supervisor qualified as a skilled

job with a light exertion level; that her previous work as a packager qualified as an unskilled job

with a medium exertion level; that her previous work as a roller qualified as a semiskilled job

with a medium exertion level; and that her previous work as a laundry worker qualified as an

unskilled job with a medium exertion level. Ms. Neel stated that these jobs had skills transferable

to work as a semiconductor assembler, which would qualify as a sedentary, semiskilled job, and

to work as an eyeglass lens assembler, which would qualify as sedentary work. (R. 47-49).

  The ALJ asked Ms. Neel to assume that the claimant could sit for six hours and stand for

six hours out of an eight hour workday with normal breaks. The ALJ additionally asked her to

assume that the claimant could occasionally lift and carry more than twenty pounds and

frequently lift and carry ten pounds, and that the claimant could lift and carry these amounts for

up to two-thirds of the day. Ms. Neel responded that under these limitations, the claimant could

not perform her prior work because the prior work required that the claimant stand throughout

the entire shift. The ALJ then asked Ms. Neel to assume that the jobs would allow the claimant to

sit for fifteen minutes of every hour. Ms. Neel testified that under these conditions, the claimant

would be able to perform her previous work as an assembly supervisor. She also stated that the

claimant would be able to perform light, unskilled work as an inspector, packer, and machine

operator. (R. 49-52).

  The claimant's attorney then questioned Ms. Neel. Responding to the attorney, Ms. Neel

stated that the claimant's inability to communicate in English would create a significant

vocational impairment for a position as a production supervisor. She also testified that a person's

inability to use her hands on a frequent basis would affect her ability to perform jobs found in the claimant's past relevant work. (R. 52-55).

*The ALJ's Decision*

On September 27, 2010, the ALJ issued a decision finding that the claimant was not disabled under the Social Security Act. (R. 22). First, the ALJ found that the claimant met the insured status requirements of the Social Security Act on June 30, 2008. Next, the ALJ determined that the claimant had not engaged in substantial gainful activity during the period from her alleged onset date of March 17, 2007 through her date last insured, June 30, 2008.

The ALJ found that the claimant was not disabled, as the record failed to show "medical signs or laboratory findings to substantiate the existence of a medically determinable impairment." (R. 19, 22). In reaching this conclusion, the ALJ considered the claimant's medical history. He determined that "the claimant has a history of treatment for several impairments," but none of these impairments showed "a severity which significantly impacted her level of functioning." (R. 21). The ALJ noted that in January 2001, Dr. Lynn and Dr. Collins performed an x-ray and MRI scan that revealed that the claimant's spine had no abnormalities. He also referenced the Functional Capacity Evaluation performed by Mr. Matzek from June 2001 that found that she could perform a medium level of work activity, and that the claimant subsequently returned to full-duty work without restrictions. (R. 20).

The ALJ stated that the record contained little evidence of any further treatment until November 3, 2005, when the claimant complained of neck pain and right arm weakness to Dr. Aggarwal. The doctor found that the claimant had "some weakness," a grip strength level of four out of five, and that her range of motion in the cervical spine was "fairly normal." The ALJ stated

that "evidence of additional treatment is extremely limited," noting that the next record of treatment was on March 17, 2007, when the claimant was admitted to the emergency room of Decatur General Hospital after complaining of a headache and some mild chest discomfort. The ALJ noted that the claimant showed signs of mild coronary atherosclerosis, but the record contained no evidence that the claimant continued to experience problems related to a heart condition. (R. 20-21).

The ALJ gave no weight to Jennifer Anderson's determination that she had insufficient evidence prior to the claimant's date last insured to rate her limitations. The ALJ accepted that Ms. Anderson's opinion was consistent with the evidence, but he gave no weight to the opinion as it was not from a medical source. The ALJ also gave no weight to the Dr. Acosta's March 20, 2012 opinion that the claimant was disabled. He found that no treatment record provided support for the doctor's opinion and that "the evidence was subsequent to her date last insured." He also noted that the Commissioner alone had authority to decide whether a claimant is disabled. (R. 21).

The ALJ found that the claimant's allegation that her condition had worsened was contradicted by the absence of evidence of treatment following her release from the Decatur General Hospital in 2007. He noted that, except for the note from Dr. Acosta, the record contains no evidence of treatment following this release. *Id.*

The ALJ considered the claimant's alleged disability due to depression and found "no evidence . . . that the claimant reported depressive symptoms to any of her treating sources or that she sought treatment from a mental health source." He also noted that in the claimant's Function Report, she reported activities which were inconsistent with a level of psychological problems

14

that were disabling, such as shopping and making plans with others. *Id.*

The ALJ concluded that even considering the combined effects of the claimant's impairments, the record contained "no evidence to support severe limitations consistent with a finding of disability, as there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment which significantly impacted her level of functioning through the date last insured." *Id.*

## VI. DISCUSSION

The claimant did not file a brief in this matter. The Eleventh Circuit has not addressed whether a social security disability claimant must file a brief with his original complaint in the district court, nor has the Court determined the specific consequences of a claimant not filing a brief with the district court. The federal districts differ in their approach to complaints unaccompanied by briefs. The Southern District of Georgia has held the non-filing of a brief in a social security case to be a complete waiver of claims. *See Walton v. Astrue*, 2010 U.S. Dist. LEXIS 11515, *5 n.3 (S.D. Ga. 2010). The District of South Carolina has dismissed complaints unaccompanied by briefs for failure to prosecute. *See Messer v. Comm'r of Soc. Sec*, 2011 U.S. Dist. LEXIS 152525 (D. S.C. 2011); *but see Shaw v. Comm'r of Soc. Sec.*, 1998 U.S. Dist. LEXIS 18414, *5 (N.D.N.Y. 1998) (holding that dismissing a claimant's complaint for not filing a brief too harsh).

However, the majority of districts, including the Northern District of Alabama, review the record to determine whether the ALJ properly applied legal standards and supported his factual conclusions with substantial evidence, despite the claimant not filing a brief. *See, e.g., Mitchell v. Apfel*, 1999 U.S. Dist. LEXIS 17549 (N.D. Ala. 1999); *see also Beckstrom v. Astrue*, 2011 U.S.

Dist. LEXIS 38224, *6 (D. Az. 2011) (finding the filing of briefs unnecessary in social security disability complaints). Moreover, the notice to parties issued by the clerk of this court upon receipt of social security disability benefits pleadings states that the court does not require briefs.

Having determined that the claimant's non-filing does not restrict review, this court will review the record to determine whether the ALJ properly applied legal standards and supported his factual findings with substantial evidence. For the reasons stated below, this court finds that the ALJ properly applied legal standards and supported his conclusions with substantial evidence.

**1) Whether the ALJ erred in failing to give weight to the examining physician Dr. Acosta's opinion.**

The ALJ gave no weight to Dr. Acosta's opinion that the claimant was disabled. An ALJ has the authority to weigh any medical opinion and determine how much influence the opinion should have on his findings. *See* 20 C.F.R. § 404.1527(d); *Crawford*, 363 F.3d at 1159. An ALJ has good cause to discount a physician's opinion if the opinion is conclusory. *See Phillips*, 357 F.3d at 1240-41; *Edwards*, 937 F.2d at 583. If a physician's opinion does not pertain to the claimant's condition during the disability period, the ALJ may decline to give weight to the opinion. *See Mason*, 430 F. App'x at 833.

The ALJ gave no weight to Dr. Acosta's opinion, as he has the power to do under Social Security regulations and relevant case law. *See* 20 C.F.R. § 404.1527(d); *Crawford*, 363 F.3d at 1159. The ALJ properly found that no treatment records provided support for Dr. Acosta's opinion that the claimant was disabled. The record contains no evidence of treatment by Acosta or any other doctor for lateral sclerosis. As Dr. Acosta's opinion was conclusory and unsupported

by the medical record, the ALJ had good cause to give no weight to the opinion. *See Phillips*, 357 F.3d at 1240-41; *Edwards*, 937 F.2d at 583.

Additionally, the ALJ determined that Dr. Acosta's opinion did not evaluate the claimant's condition prior to her last date insured and, therefore, deserved no weight. Dr. Acosta examined the claimant and gave his opinion on March 20, 2010, almost two years after the claimant's date last insured, June 30, 2008. Because Dr. Acosta's opinion did not pertain to the claimant's condition during the disability period, this court finds that the ALJ had no obligation to give any weight to the opinion. *See Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 833 (11th Cir. 2011).

This court finds that the ALJ properly concluded that the claimant did not have a severe medically determinable impairment and that substantial evidence supports his decision.

**2) Whether the ALJ erred in finding that the claimant did not have a severe medically determinable impairment**.

The claimant has the burden to prove that she has a disability. 20 C.F.R. § 404.1505(a); *see Gibson*, 762 F.2d at 1518. To state a claim for disability insurance benefits, the clamant must demonstrate that she became disabled *prior* to the expiration of her disability insured status. *See* 42 U.S.C. §§ 416(i)(3), 423(a), (c); 20 C.F.R. §§ 404.101, 404.130, 404.131; *Moore*, 405 F.3d at 1211. To demonstrate that she has a disability, a claimant must present objective medical evidence that establishes the presence of a severe medically determinable impairment. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1505(a). The medical evidence must be from an acceptable medical source, such as a medical doctor. 20 C.F.R.§ 404.1513(a). The evidence must show that the claimant has "anatomical, physiological, or psychological abnormalities which can

be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §
404.1508; *see also* 20 C.F.R. § 404.1528.

To qualify as a severe impairment, an impairment must significantly limit a claimant's
ability to do basic work activities, such as walking or understanding and remembering directions.
20 C.F.R. §§ 404.1520(c), 404.1521; *see also McCruter*, 791 F.2d at 1547. A diagnosis of a
condition is insufficient to establish that a claimant's impairment is severe.  *Moore*, 405 F.3d at
1213 n.6*; Sellers*, 246 F. Supp. 2d at 1211. If a claimant does not meet her burden to produce
evidence that establishes that she has a severe medically determinable impairment, she will be
found not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); *Phillips*, 357 F.3d at 1237-40;
*Jamison*, 814 F.2d at 588.

In this case, substantial evidence supports the ALJ's determination that the claimant
failed to prove that she had a severe medically determinable impairment and that, therefore, she
was not disabled. The ALJ properly reviewed the claimant's medical history in reaching this
conclusion. The ALJ considered the claimant's most recent medical evidence, Dr. Acosta's
March 2010 diagnosis of lateral sclerosis. As previously discussed, this court agrees with the
ALJ's decision to give no weight to Dr. Acosta's opinion. However, even if this court had
determined that Dr. Acosta's opinion deserved weight, the opinion would not establish that the
claimant was disabled as of the date last insured. As a diagnosis of a condition does not prove
that the claimant has a severe impairment, the ALJ did not err by finding that Dr. Acosta's
diagnosis of lateral sclerosis did not establish the claimant had a disability. *See Sellers*, 246
F.Supp.2d at 1211 ("A diagnosis alone is an insufficient basis for finding that an impairment is
severe . . . Objective medical evidence must confirm that the impairment is severe."). The ALJ

18

properly determined that the claimant's absence of treatment history for lateral sclerosis diminished the report's probative value to establish that lateral sclerosis would be a severe medically determinable impairment.

The ALJ also considered the claimant's medical history prior to her alleged onset date of March 17, 2007 to support his finding that she was not disabled. He noted that the x-ray and MRI of her cervical spine in December 2000 revealed no acute abnormalities. Mr. Matzek's Functional Capacity Examination in June 2001 stated that the claimant had the ability to perform a medium level of work activity and noted that the claimant had returned to full-duty work without restrictions. However, Dr. Aggarwal's treatment notes on July 26, 2001 indicate that he placed the claimant on permanent work restrictions. The Commissioner argues that Dr. Matzek's examination and the fact that the claimant continued to perform full-duty work without restrictions undercut any claim that Dr. Aggarwal's treatment records show that she is disabled. This court is persuaded by the Commissioner's argument, as Dr. Aggarwal did not describe the nature of restrictions; the claimant continued to perform full-duty work without restrictions; and Dr. Matzek stated that the claimant had the ability to perform a medium level of work activity and noted that the claimant had returned to full-duty work without restrictions. *See Ellison*, 355 F.3d at 1275-76 (finding that the ALJ's decision that the claimant was not disabled was based, in part, on the fact that the claimant "worked for several years in spite of his impairments").

The record indicates that Dr. Aggarwal did not examine the claimant again except for the visit on November 3, 2005. At this visit, the doctor found that the claimant had some weakness, normal sensation and reflexes, almost full grip strength (four out of five), and fairly normal range of motion. Dr. Aggarwal instructed the claimant to return for reevaluation in one month but did

19

not state that the claimant had any type of limitations. The doctor did not make reference to any work limitation.

Additionally, the ALJ properly considered the claimant's alleged disability due to depression. The record contained no evidence that the claimant reported depressive symptoms to any of her treating sources or sought treatment from a mental health source. The ALJ properly determined that her responses to her Function Report that she could shop and make plans with others were inconsistent with a level of psychological problems that are disabling. As the claimant failed to present evidence that she was disabled due to depression, the ALJ properly concluded that the condition was not a severe medically determinable impairment.

The ALJ also considered the sparsity of medical evidence and the gap in the claimant's medical history. The only evidence of medical treatment between her alleged onset date of March 17, 2007 and her date last insured on June 30, 2008 was her treatment after being admitted to the emergency room for a headache and mild chest discomfort on March 17, 2007.  The ALJ reviewed the record of the claimant's visit to the emergency room on March 17, 2007  and noted that the diagnostic tests were normal and revealed only mild or moderate conditions. The record does not contain any evidence that the claimant received any subsequent treatment related to these conditions; in fact, Dr. Acosta's opinion that diagnosed the claimant with lateral slerosis in 2010 did not address or mention any problems or symptoms relating to the claimant's mild coronary atherosclerosis.  The ALJ properly concluded that the record failed to show that her mild heart condition significantly affect her ability to work.

The claimant testified that she had suffered from her medical impairments for eight years, and that her condition worsened after her emergency room visit on March 17, 2007.   The

claimant testified that she was unable to afford medications and had to seek treatment in Mexico "because it's cheaper." (R. 42-43). Although the ALJ did not specifically address the claimant's inability to afford medication or treatment, his failure to do so is not reversible error.

"[W]hen an ALJ relies on noncompliance as the *sole* ground for the denial of disability benefits, and the record contains evidence showing that the claimant is financially unable to comply with prescribed treatment, the ALJ is required to determine whether the claimant was unable to afford the prescribed treatment." *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (emphasis added). A claimant's inability to afford prescribed medical treatment is a good cause for a claimant's failure to follow prescribed medical treatment. *Id*. However, where the ALJ does not base his decision significantly or solely on noncompliance, the ALJ does not err by failing to consider the claimant's inability to afford treatment. See *id.* ("[T]he ALJ's determination that Ellison was not disabled was not significantly based on a finding of noncompliance," and, therefore, the ALJ did not err by failing to "consider the effect of Ellison's financial condition on his ability to obtain treatment for his seizures.")

In this case, this court finds that the ALJ did not base his decision significantly or solely on the claimant's failure to follow prescribed medical treatment; he based it on the claimant's *lack* of objective medical evidence in the record showing that the claimant had a medically determinable impairment. As discussed above, the ALJ properly considered the claimant's entire medical history prior to her date last insured to support his finding that the claimant was not disabled, including an x-ray and MRI of her spine showing no acute abnormalities; a functional capacity assessment in 2001 showing the claimant could perform medium level work; and the claimant's return to full-duty work without restrictions in 2001. The ALJ correctly indicated that

21

the record contains "no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment which significantly impacted her level of functioning through the date last insured." (R. 21).

The court points out that the claimant indicated to Dr. Aggarwal in 2005 that she had been living in Mexico for "the last several years," approximately 2003 through 2005. The claimant testified that she had to seek treatment in Mexico because treatment was cheaper there. The court notes that the record contains no medical evidence or records from any doctor in Mexico from 2003 through 2005 while she was living in Mexico, where she claims she had to go to afford medical treatment. Additionally, after her emergency visit on March 17, 2007, if the claimant's alleged impairments worsened and required additional treatment, she could seek treatment at an emergency room, as she had done previously. Also, upon discharge from the emergency room at Decatur General Hospital on March 17, 2007, Dr. Arnold referred the claimant to a free clinic; however, no evidence exists in the record that the claimant sought treatment at the free clinic. Instead, the only medical evidence the claimant produced was a letter from Dr. Acosta from 2010 that did not even address the symptoms she claims worsened after her emergency room visit on March 17, 2007.

As previously stated, the claimant bears the burden of presenting objective medical evidence that establishes that she has a severe medical impairment that affects her ability to work. *See* 42 U.S.C. § 423 (d)(5)(A); 20 C.F.R. § 404.1505(a). The ALJ correctly found that the claimant failed to meet this burden. The record contains no evidence demonstrating that the claimant had "anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." *See* 20 C.F.R. § 404.1508;

*see also* 20 C.F.R. § 404.1528.  Because the ALJ did not base his decision significantly or solely on the claimant's noncompliance with prescribed medical treatment,  but instead on the claimant's failure to produce medical evidence indicating a disabling impairment, the ALJ did not err in failing to address her financial condition.

This court finds that the ALJ properly concluded that the claimant did not have a severe medically determinable impairment and that substantial evidence supports his decision.

## VII. CONCLUSION

For the reasons as stated, this court concludes that the decision of the Commissioner is supported by substantial evidence and is to be AFFIRMED. The court will enter a separate order to that effect simultaneously.

DONE and ORDERED this 26th day of September, 2012.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE